THE ISABELA.

(District Court, D. Maryland. May 26, 1919.)

WHARVES ⬤═16—STATUTE—CONSTRUCTION—GOVERNMENT USE OF DRY DOCKS FOR VESSELS "BELONGING" TO UNITED STATES.

Act Cong. June 19, 1878, granting to libelant a portion of the Ft. McHenry reservation on condition that grantee construct a dry dock and afford the United States the right to use the same for examination and repair of vessels "belonging to the United States free from charge of docking," *held* to include a vessel in United States service under a charter amounting to a demise, although being repaired for immediate return to the owner upon leaving the dock; the word "belonging" not meaning absolute and unqualified ownership.

In Admiralty. Libel by the Baltimore Dry Docks & Shipbuilding Company against the steamship Isabela, in which the United States intervened. Dismissed.

George Weems Williams, of Baltimore, Md., for libelant.
George Forbes, of Baltimore, Md., for respondent, The Isabela.
Samuel K. Dennis, U. S. Atty., of Baltimore, Md., for intervener.

ROSE, District Judge. This case calls for the construction of a provision of Act June 19, 1878, c. 310, 20 Stat. 167, which authorizes the Secretary of War to convey to the Baltimore Dry Dock Company a portion of the Ft. McHenry reservation, in consideration of the grantee constructing thereon a dry dock 450 feet long, and affording the United States the right to the use forever of "the dry dock at any time for the prompt examination and repair of vessels belonging to the United States, free from charge of docking."

The Isabela is an American steamship, and is owned by the New York & Porto Rico Steamship Company. For some time before she was docked the government had her in its service upon a bare boat charter. By the terms of the charter she, while the government held her, was manned and operated by the government, which bore her expenses, and assumed all risk of accidents or injury to her, and bound

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

itself to return her in as good order and condition as when received, ordinary wear and tear excepted. The government was through with her and sent her to the dry dock to put her, at its expense, in order, for surrender to its owner. She was turned over to the latter when she came out of the dock. She was at once arrested under a libel, which was filed while she was still in the government's possession, but process under which was not served until after she had passed into the custody of her owner.

The libelant holds under the grant made in accordance with the act of Congress already mentioned, and admits that it is bound by its terms. It says, however, that it is not thereby required to dock, free of charge, any vessel of which the government is not the owner, for in its view such a ship does not belong to the United States within the meaning of the act. On the other hand, the government contends that a ship belongs to it within the sense of the statute when, as in the instant case, there has been a complete demise of the ship to it, and it is responsible for repairs and docking charges. In answer the libelant says that, if Congress had meant that the government should have free all docking done for its account, it would have omitted the words "belonging to the United States," for they, if the government's contention be sustained, are superfluous. It points out that there is, or in 1878 appeared to be, in the nature of things some limit upon the number of ships which at any particular time the government was likely to own, but almost none as to those which it may upon occasion hire. It argues that it is unreasonable to conclude that the parties intended to impose or assume so indefinite and conceivably burdensome an obligation. The word "belonging" is not a technical one. Its meaning depends to a large extent upon the circumstances under which it is used. In common speech and to ordinary understanding, something may well belong to one, although he has less than an absolute and unqualified ownership of it.

Occasionally, in the course of the last hundred years or more, English courts have had occasion to pass upon questions which were quite similar to that now under consideration. They concluded that, where a charter amounts to a demise of a ship, the charterer will be deemed the owner, so far as concerns his rights and obligations to third parties, including the state. Trinity House v. Clark, 4 Maule & Selwyn, 288; Sir John Jackson v. S. S. Blanche, [1908] L. R. App. Cases, 126; In re The Sarpen, [1916] L. R. Probate, 312.

In the absence of a clearer guide, I am inclined to follow these rulings, feeling as I do that, if such a case as the one now at bar had in 1878 been put up to Congress and the Dry Dock Company, they would both have agreed that the government should have the service free. This conclusion renders it unnecessary to pass on the contention of the owner that, even assuming that the government was bound to pay for the service, the ship was not liable therefore in rem.

It follows that the libel will be dismissed.